# EXHIBIT 2

IN THE CIRCUIT COURT FOR THE
13th JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

WATERS PLACE 26, LLC,

      Plaintiff,

v.

COMPASS BANK, an Alabama banking
corporation,

      Defendant.

_____/

GENERAL JURISDICTION DIVISION

CASE NO.:      09 10557

DIVISION A



APR 2 3 2009

CLERK OF CIRCUIT COURT

## **COMPLAINT**

Plaintiff, WATERS PLACE 26, LLC, a Florida limited liability company ("Waters Place" or "Plaintiff"), sues Defendant, COMPASS BANK, an Alabama banking corporation ("Compass" or the "Bank") and alleges as follows:

### **INTRODUCTORY STATEMENT**

1.      This is an action by Waters Place against Compass for, among other wrongs, Breach of the Implied Covenant of Good Faith and Fair Dealing, Tortious Interference with Advantageous Business Relationship, Fraudulent Mispresentation, Negligent Misrepresentation, Breach of Contract, and Breach of Fiduciary Duty in which the Bank made numerous fraudulent and negligent representations to Waters Place upon which Waters Place relied upon to its detriment.

## PARTIES, JURISDICTION AND VENUE

2.     This is an action for damages exceeding $15,000.00, exclusive of interest, costs and attorneys' fees, derived through fraudulent lending activities conducted in Hillsborough County, Florida.

3.     Plaintiff, Waters Place, is a Florida limited liability company, having its principal place of business in Miami-Dade County, Florida, who is engaging in or carrying on a business venture in Hillsborough County, Florida.

4.     Defendant, Compass Bank, is engaging in, or carrying on a business or business venture in Hillsborough County, Florida, or having an office or agency within this state.

5.     Venue is proper in Hillsborough County, Florida because all actions and omissions leading to the filing of this action occurred in Hillsborough County, Florida.

## FACTS COMMON TO ALL COUNTS

6.     This action involves two acquisition and renovation loans provided by Compass Bank.

7.     One loan was between Compass and Waters Place (the "Waters Mortgage"). A true and correct copy of the Waters Mortgage is attached hereto as Exhibit "**A**".

8.     The other loan involved Compass and Atlamonte 26, LLC (the "Altamonte Mortgage").

9.     Both Waters Place and Altamonte 26, LLC are managed by ABBA 26 Management Corporation (hereinafter "ABBA").

10.     ABBA manages and owns companies formed for the renovation and acquisition of multi-family apartment buildings.

11.     ABBA is comprised of three individuals who serve as directors/officers of ABBA.

12.     These individuals are Hector Aragon, Abbey Berkowitz and Barry Appel (the "ABBA Directors").

13.     ABBA managed multiple companies which renovated and acquired multi-family apartment properties (the "Projects"), and often times went to Compass Bank for the financing of these Projects.

14.     In fact, Compass Bank financed at the minimum four (4) separate Projects with ABBA.

15.     Often times, in consideration of Compass financing the Projects, the ABBA Directors would personally guarantee the loans.

16.     The ABBA Directors personally guaranteed the loan between the Bank and Waters Place, LLC; the loan between the Bank and Altamonte 26 LLC; a loan between the Bank and Zephyr 26 Holdings, LLC; and a loan between the Bank and Lakeview 26 Holdings, LLC.

17.     Up until the actions which catalyzed the present action, the ABBA Directors had a long standing positive working business relationship with Compass.

18.     With the downturn in the Florida real estate market, the ABBA Directors approached the Bank to renegotiate two loans Compass had with ABBA managed companies: the Altamonte Mortgage and the Waters Mortgage.

19.     The Bank and the ABBA Directors came to the agreement that Altamonte, LLC would transfer all of its interests to Compass Bank (a "Deed in Lieu") and in exchange for this Deed in Lieu, Compass would release Waters Place from its loan with the Bank for a payoff of less than ten million dollars ("$10,000,000.00") (the "Short Sale").

20.     At all times it was made known by ABBA to the Bank that all negotiations included both mortgages and that the Deed in Lieu with Altamonte 26, LLC was given in consideration for the Short Sale with Waters 26, LLC.

21.     In furtherance of this agreement, Altamonte 26, LLC complied with all of the Bank's requirements to effectuate the Deed in Lieu.

22.     In fact, the Deed in Lieu was executed, and Altamonte 26, LLC transferred all of its interests in the mortgaged property to the Bank.  A true and correct copy of the Mortgage Satisfaction and Release is attached hereto as Exhibit "B."

23.     Additionally, in order to effectuate the Short Sale of the mortgaged property owned by Waters Place, Waters Place actively marketed the Property and found a buyer of the Property (the "Prospective Buyer").

24.     Waters Place informed the Bank that it had a buyer for the Property and requested that the Bank send confirmation that it would accept a payoff for the Waters Place Property (the "Property") for an amount less than $10 million dollars.

25.     On numerous occasions the Bank represented through its agents, that it would accept less than $10 million dollars for the payoff of the Property.

26.     In fact, in several communications from the Bank to Waters Place, the Bank stated that the payoff offer of less than $10,000,000.00 was valid up to and until

September 1, 2008. A true and correct copy of a letter documenting the pay- off offer is attached hereto as Exhibit "C".

27.     Waters Place and the Prospective Buyer had a purchase and sale agreement for the Property in the amount of $10,750,000.00. A true and correct copy of the reinstated Purchase and Sale Agreement is attached hereto as Exhibit "D".

28.     The Bank had full knowledge of Waters Place's negotiations with the Prospective Buyer.

29.     Waters Place intended to close on the sale of the Property with the prospective buyer before the end of August 2008.

30.     However, on August 13, 2008, unbeknownst to Waters Place or the ABBA Directors, the Bank sold and assigned the Waters Place mortgage to a third party, Edgefield District Mortgage Trust ("Edgefield"). A true and correct copy of the Assignment is attached hereto as Exhibit "E".

31.     This assignment was completed at well below the price which Waters Place had procured for the sale of the Property to the Prospective Buyer.

32.     The Bank did not inform Waters Place of this assignment until or about August 21, 2008 via an email communication from the Bank's attorney to the attorney for Waters Place.

33.     Nor did the Bank inform Edgefield of the payoff offer it had negotiated with Waters Place.

34.     As a result of the assignment of the Waters Mortgage to Edgefield, Waters Place lost its deal with the Prospective Buyer.

35.     On or about September 10, 2008, Edgefield commenced a foreclosure action against Waters Place on the Waters Mortgage.

36.     The foreclosure action by Edgefield succeeded, and Waters Place is no longer the owner of the Property and was unable to complete a Short Sale of the Property.

## COUNT I
## FRAUDULENT MISREPRESENTATION

Waters Place realleges and reincorporates by reference paragraphs 1 through 36 above as more fully set forth herein.

37.     On numerous occasions during the time period beginning in February 2008 and extending up until August 2008, the Bank, through its agents, knowingly and/or recklessly made false statements regarding the Deed in Lieu and Short Sale/payoff offer.

38.     The Bank, by and through its agents, including but not limited to, Frank Heuszel and attorney Paul Young, knew, or should have known, that the Bank did not intend to allow for Waters Place to close on the Short Sale, contrary to its earlier misrepresentations that it would allow for the payoff in consideration of the Deed in Lieu with Altamonte.

39.     The Bank, by and through its agents, intended that said representations adversely influence the management of Waters Place into effectuating the Deed in Lieu of the Altamonte Property.

40.     Waters Place has suffered damages in justifiable reliance on the Bank's fraudulent misrepresentations.

WHEREFORE, Plaintiff, Waters Place demands judgment against Compass Bank for damages, together with interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION

Waters Place realleges and reincorporates by reference paragraphs 1 through 36 above as more fully set forth herein.

41.    The Bank, by and through its agents, including but not limited to, Frank Heuszel and Paul Young, knowingly and/or recklessly made false representations regarding the Short Sale terms.

42.    The Bank, by and through its agents, including but not limited to, Frank Heuszel and Paul Young, knew or should have known that the Bank intended on assigning its mortgage on the Property and had no intention of allowing the Short Sale to proceed, in contradiction of its earlier representations.

43.    The Bank, by and through its agents, intended that said representations adversely induce Waters Place into procuring a Prospective Buyer of the Property, and expend significant sums of money to ensure that the Short Sale of Waters Place and the Deed in Lieu of Altamonte were effectuated.

44.    Waters Place has suffered damages in justifiable reliance of the Bank's representations.

WHEREFORE, Plaintiff, Waters Place, demands judgment against the Bank for damages, together with interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT

Waters Place realleges and reincorporates by reference paragraphs 1 through 36 above as more fully set forth herein.

45.     Waters Place and the Bank had a valid written contract in the form of various written letters and correspondence whereby the Bank would accept a payoff of its mortgage on the Property in an amount less than $10 million.

46.     Waters Place spent significant sums of money and procured a Prospective Buyer of the Property in consideration of the promise by the Bank that it would accept a pay off of less than $10 million for the Mortgage.

47.     The Bank materially breached this contract when it assigned the Mortgage to a third party.

48.     As a result of the Bank's breach, Waters Place has been, and continues to be damaged.

WHEREFORE, Plaintiff, Waters Place demands judgment against the Bank for damages, together with interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT IV
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Waters Place realleges and reincorporates by reference paragraphs 1 through 36 above as more fully set forth herein.

49.     The Bank and Waters Place had a contract where in consideration of the Deed in Lieu with the Altamonte property, the Bank offered a payoff of the mortgage on the Waters Place Property in an amount less than $10 million.

50.    This offer was valid up to and until September 1, 2008.

51.    There was an implied duty requiring that the parties to the agreement, the Bank and Waters Place, act in good faith.

52.    The Bank failed to act in good faith when it continued to make representations to Waters Place that the payoff offer was valid, and instead underhandedly assigned the Waters Mortgage to Edgefield on August 13, 2008.

53.    This breach of the implied covenant of good faith and fair dealing by the Bank, caused Waters Place to not be able to close on the sale of the Property in the amount of $10, 750,000.00, or for $750,000.00 more than the payoff amount it owed to the Bank.

54.    Waters Place suffered damages by the Bank's breach of its implied covenant of good faith and fair dealing.

WHEREFORE, Waters Place demands judgment against Compass Bank for compensatory damages, punitive damages, costs and expenses incurred in connection with this action, and for such other and further relief as the Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

Waters Place realleges and reincorporates by reference paragraphs 1 through 36 above as more fully set forth herein.

55.    Waters Place had a business relationship with Blue Rock, the Prospective Buyer of the Property, for the Property's sale and purchase.

56.    This relationship between Waters Place and Blue Rock was evidenced by numerous correspondence as well as a valid Purchase and Sale agreement.

57.    The Bank had knowledge of the relationship between Waters Place and

Blue Rock.

58.     The Bank intentionally and unjustifiably interfered with this business relationship when it assigned the Waters Mortgage to a third party, precluding the Purchase and Sale Agreement between Waters Place and Blue Rock to close.

59.     As a result of the Bank's tortious interference, Waters Place was, and continues to be, damaged.

WHEREFORE, Plaintiff, Waters Place demands judgment against Compass Bank for damages, together with interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VI
## BREACH OF FIDUCIARY DUTY

Waters Place realleges and reincorporates by reference paragraphs 1 through 36 above as more fully set forth herein.

60.     The Bank and Waters Place shared an ongoing special confidential business relationship whereby Waters Place reposed trust and confidence in the Bank which required the Bank to act with Waters Place's interests in mind.

61.     The Bank breached its fiduciary duty to Waters Place and took unfair advantage of Waters Place when it failed to disclose fairly and honestly to Waters Place that it was negotiating with a third party to assign its mortgage upon the Property.

62.     In fact, the Bank did assign the mortgage to a third party unbeknownst to Waters Place.

63.     As a result of the Bank's breach of its fiduciary duty to Waters Place, Waters Place has been, and continues to be damaged.

WHEREFORE, Plaintiff, Waters Place demands judgment against Compass Bank for damages, together with interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

JURY TRIAL DEMAND

Waters Place hereby requests a trial by jury on all issues so triable.

Dated this _____ day of April, 2009.

Respectfully submitted,

**Marin Eljaiek & Lopez, P.L.**
Attorneys for Plaintiff
2601 South Bayshore Drive, Suite 700
Miami, Florida  33133
Telephone (305) 444-5969
Facsimile (305) 444-1939

By: _____
Anthony M. Lopez, Esq.
Florida Bar.:13685

Prepared By/Record and Return To:
Anthony A. Anderson, Esquire
Rogers Towers, P.A.
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207



Certified True Copy

## MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

THIS MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT (hereinafter referred to as the "Mortgage"), is made this 3rd day of March, 2006, between **WATERS PLACE 26, LLC,** a Florida limited liability company (Organizational ID # L05000108272) whose post office address is 4434 N. Bay Road, Miami Beach, Florida 33140 (hereinafter referred to as the "Mortgagor"), and **COMPASS BANK,** an Alabama banking corporation, whose post office address is 10060 Skinner Lake Drive, Jacksonville, Florida 32246 (hereinafter referred to as the "Mortgagee") which terms Mortgagor and Mortgagee, whenever hereinafter used shall be construed to refer to and include the heirs, legal representatives, executors, administrators, successors and assigns of said parties.

## R E C I T A L S:

A.     The Mortgagor is justly indebted to the Mortgagee in the principal sum of Fourteen Million Seven Hundred Thousand and 00/100 Dollars ($14,700,000.00) as evidenced by that certain Promissory Note dated of even date herewith, with a maturity date for payment of any and all outstanding principal and accrued interest of **March 1, 2008** (hereinafter, together with any and all extensions, renewals, modifications, replacements, substitutions, and any and all other certificates or evidence of indebtedness evidenced by said Promissory Note, referred to as the "Mortgage Note"), which Mortgage Note is by reference made a part hereof.

B.     That certain Construction Loan Agreement of even date herewith (the "Loan Agreement") provides for periodic advances of loan proceeds under the Mortgage Note by Mortgagee to Mortgagor to facilitate the construction of improvements by Mortgagor on the property described in Exhibit "A" referred to herein and located in Hillsborough County, Florida.

C.     As used herein, the term "Loan" shall refer to the loan evidenced by the Mortgage Note. To evidence and secure the Loan, the Mortgagor has executed and delivered to Mortgagee the Mortgage Note, this Mortgage, the Loan Agreement, a UCC Financing Statement, a Conditional Assignment of Rents, Leases and Revenues, an Assignment of Borrower's Interest in Contract Documents of even date herewith and other documentation related to the Loan, which documents and any modification, extension and amendments thereof are herein referred to as the "Loan Documents."

D.     Various individuals (hereinafter, collectively the "Guarantor") have guaranteed the repayment of the Mortgage Note and the performance of Mortgagor's obligations under the Loan Documents.



**EXHIBIT**
A

E.    This Mortgage shall secure the Loan outstanding from time to time under the Mortgage Note and indebtedness referred to herein and the observance and performance by Mortgagor, of the terms and conditions and covenants and agreements of Mortgagor in the Loan Documents.

THEREFORE, the Mortgagor, in consideration of and to secure the indebtedness now or hereafter evidenced and secured by the Loan Documents and the observance and performance by Mortgagor of the terms and conditions and agreements and covenants of Mortgagor in the Loan Documents, receipt whereof is hereby acknowledged, does hereby mortgage and grant a security interest in, grant, bargain, sell, alien, remise, release, convey, and confirm unto the Mortgagee, its legal representatives, heirs, successors and assigns, the land of which the Mortgagor is now seized and possessed and in actual possession, situate in Hillsborough County, State of Florida, described more particularly in **Exhibit "A"** attached hereto and by reference made a part hereof.

TOGETHER with all buildings, structures, and other improvements now or hereafter located on said real property, or any part thereof; and

TOGETHER with all rights-of-way, streets, alleys, passages, riparian and littoral rights, waters, water courses, sewer rights, rights, liberties, privileges, tenements, hereditaments, easements, and appurtenances thereunto belonging or in anyway appertaining, whether now owned or hereafter acquired by the Mortgagor, and including all rights of ingress and egress to and from said real property and all adjoining property (whether such rights now exist or subsequently arise), together with the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and

TOGETHER with all of the Mortgagor's right, title and interest in all machinery, apparatus, equipment, fittings, and fixtures, whether actually or constructively attached to said real property, and all building materials of every kind and nature, and all trade, domestic, and ornamental fixtures and all personal property (excluding fixtures, furniture and personal property owned by tenants or other third parties) now or hereafter located in, upon, over, or under said real property or any part thereof on or off-site benefiting said real property and used or usable or intended to be used in connection with any present or future operation of said real property, including, but without limiting the generality of the foregoing:  all heating, air-conditioning, lighting, incinerating, and power equipment; all engines, compressors, pipes, pumps, tanks, motors, conduits and switchboards; all plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; all boilers, furnaces, oil burners, vacuum cleaning systems, elevators, and escalators; all built-in stoves, ovens, ranges, disposal units, dishwashers, water heaters, exhaust systems, refrigerators, cabinets, and partitions; all rugs and carpets; laundry equipment; together with all contract rights to acquire any of the foregoing and all deposits and payments made under contracts for the acquisition of same; together with all additions and accessions thereto and replacements thereof and proceeds therefrom (the Mortgagor hereby agreeing with respect to all additions, accessions, replacements and proceeds to execute and deliver from time to time such further instruments as may be requested by the Mortgagee to confirm and perfect the conveyance, transfer and assignment of any and all of the foregoing); all of the foregoing shall be deemed to be so permanently affixed to the real property or to constitute real property under applicable law and shall be part of the security for the indebtedness herein mentioned and are secured, transferred and conveyed by this Mortgage.

All the foregoing property, interests and rights encumbered are sometimes collectively referred to herein as the "Premises" or "Property."

TO HAVE AND TO HOLD the same, together with all the estate, right, title, interest, homestead, dower, right of dower, separate estate property, possession, claim, and demand whatsoever in law and in equity of the Mortgagor in and to the same and every part thereof, unto the Mortgagee, and the Mortgagee's legal representatives, heirs, successors and assigns, in fee simple, forever.

Mortgagor hereby covenants with the Mortgagee and with any purchaser at foreclosure sale hereunder that the Mortgagor is indefeasibly seized of the Premises in fee simple; that the Mortgagor has full power, lawful right, and authority to convey the Premises in fee simple as aforesaid; that it shall be lawful for the Mortgagee at all times hereafter peaceably and quietly to enter upon, hold, occupy, and enjoy the Premises and every part thereof; and that the Premises are free and clear of all liens and encumbrances except for the lien of ad valorem real property taxes not yet due and payable and those exceptions set forth in the Loan Policy of Title Insurance insuring the lien of this Mortgage issued by Chicago Title Insurance Company.

Mortgagor further covenants and agrees to make such other and further assurances to perfect the fee simple title to the Premises in the Mortgagee, or in any purchaser at foreclosure sale hereunder, as may hereafter be required by the Mortgagee.

Mortgagor grants to Mortgagee a security interest in all contracts for construction of improvements to be constructed by Mortgagor upon the Property, contracts with architects and/or engineers relating to construction of such improvements, and all construction plans, drawings and specifications, and any commitment rights from lenders for the furnishing of funds for construction of improvements on and to the Property. Mortgagor also grants to Mortgagee a security interest in all building materials and equipment, utility lines, mains, pipes, cables and fittings, of whatever description, now existing or coming into existence after date of this mortgage and security agreement, whether located on-site or off-site, designed or intended to be incorporated into the improvements or for the furnishing of water, sewer, gas, electrical or telephone utility services to the Property, together with any and all contract rights with any firm or corporation furnishing such utility services. The foregoing property rights are expressly made subject to the lien of this Mortgage so that Mortgagee, upon any default by Mortgagor, may complete the improvements to the Property.

This Mortgage shall secure payment of all indebtedness evidenced and secured by the Loan Documents from time to time including, including limitation, all advances outstanding under letters of credit issued for the account of the Mortgagor. Additionally, this Mortgage shall secure all obligations incurred by the Mortgagor under any agreement between Mortgagor and Mortgagee or any affiliate of Mortgagee, including but not limited to an ISDA Master Agreement, whether now existing or hereafter entered into, which provides for an interest rate, currency, equity, credit or commodity swap, cap, floor or collar, spot or foreign currency exchange transaction, cross currency rate swap, currency option, any combination or, or option with respect to, any of the foregoing or similar transactions, for the purpose of hedging the Borrower's exposure to fluctuations in interest rates, exchange ranges, currency, stock, portfolio or loan valuations or commodity prices.

It is agreed that any additional sum or sums advanced by the then holder of the Mortgage Note to the Mortgagor at any time within twenty (20) years from the date of this Mortgage, with interest thereon at the rate agreed upon at the time of each additional loan or advance, shall be equally secured with and have the same priority as the original indebtedness secured hereby and be subject to all of the terms and provisions of this Mortgage, provided a modification to this Mortgage evidencing such future advance is executed by the Mortgagor and Mortgagee and recorded in the current public records of Hillsborough County, Florida. Provided, however, that the aggregate amount of principal indebtedness outstanding at any one time shall not exceed an amount equal to six (6) times the original principal sum of the Mortgage Note secured hereby, and provided further that it is understood and agreed that this future advance provision shall not be construed to obligate the Mortgagee to make any such additional loans or advances.

PROVIDED ALWAYS and these presents are upon the express condition that if the Mortgagor shall pay to the Mortgagee all indebtedness from time-to-time evidenced and secured by the Loan Documents, and shall promptly and fully perform, execute and complete each and every covenant, agreement, obligation, condition and stipulation contained in the Loan Documents, then this Mortgage and the estate hereby created shall cease and be null and void; otherwise the same shall remain in full force and effect.

Mortgagor does hereby covenant and agree as follows:

1.    PERFORMANCE AND PAYMENT. Mortgagor shall perform, observe and comply with all terms and conditions and agreements and covenants of Mortgagor contained in the Loan Documents and to timely pay all and singular the principal, interest, and other sums of money payable by virtue of the Loan Documents and to pay all other sums secured hereby promptly on the days the same become due, whether in due course or upon acceleration.

2.    SECURITY AGREEMENT AND FINANCING STATEMENT. This Mortgage shall be construed as a mortgage of both real and personal property and it shall also constitute and serve as a "Security Agreement" within the meaning of and shall create a security interest under the Uniform Commercial Code of the State in which the Premises are located. This Mortgage shall also serve as a Financing Statement. The address for the Mortgagor (Debtor) and the Mortgagee (Secured Party) are set forth in the introductory paragraph of this Mortgage. The Mortgagor agrees to and shall execute and deliver to the Mortgagee, in form satisfactory to the Mortgagee, such other Financing Statements and such further assurances as the Mortgagee may, from time to time, consider necessary to create, perfect, and preserve the Mortgagee's liens upon any and all Property. The Mortgagee, at the expense of the Mortgagor, may cause such statements and assurances to be recorded and re-recorded, filed and re-filed, at such times and places, as may be required or permitted by law to create, perfect and preserve such liens. The Mortgagee shall have all the rights with respect to all property encumbered hereby afforded to the Mortgagee under the Uniform Commercial Code of the State in which the Premises are located, in addition to, but not in limitation of, the other rights afforded the Mortgagee by this Mortgage. The Mortgagor shall not transfer ownership of or remove from the lands herein described any of the tangible personal property which is encumbered by this Mortgage. In the event ownership of any such tangible personal property is transferred or any of the same is removed by the Mortgagor, the same shall be replaced by other property which is free and clear of any lien or encumbrance held by any other person and such replacement property shall be of equal or better value than the property so transferred or removed. Such replacement property

shall be encumbered by the lien of this Mortgage, and appropriate financing statements covering same shall be executed by the Mortgagor.  For purposes of perfecting the security interest in personal property which is intended to become fixtures Mortgagor hereby certifies as follows:

(a)     Mortgagor is a limited liability company, organized and existing under the laws of the State of Florida, and Mortgagor covenants and agrees that its status will remain active throughout the term of this Mortgage;

(b)     Mortgagor's address is as set forth on the first page of this Mortgage; and

(c)     Mortgagor's organizational number is L05000108272.

Mortgagor authorizes Mortgagee to file a financing statement with the appropriate filing offices in the State in which Mortgagor is a registered organization, without Mortgagor's signature, further to perfect the security interests granted herein.

3.     TAXES.  Mortgagor shall pay prior to delinquency, and without requiring any notice from the Mortgagee, all and singular the taxes, assessments (general or special), levies, liabilities, obligations, judgments, rents, charges, statutory and common law liens, decrees, and encumbrances (referred to herein as "Assessments") of every nature and kind now on the Premises or that hereafter may be imposed, suffered, placed, levied or assessed thereupon, or that hereafter may be levied or assessed upon this Mortgage or upon the indebtedness secured hereby, and insofar as any of the same is of record the same shall be promptly satisfied and discharged of record and the original official document (such as the tax receipt or the satisfaction paper officially endorsed or certified) evidencing discharge shall be placed in the hands of the Mortgagee within ten (10) days after payment.  After prior written notice to Mortgagee, Mortgagor, at its own expense, may contest by appropriate legal proceedings, promptly initiated and conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any Assessment; provided that: (i) in the case of any unpaid Assessment, such proceedings shall suspend the collection thereof from Mortgagor and from the Mortgaged Property, (ii) the Mortgaged Property or any part thereof will not be in danger of being sold, forfeited, terminated, canceled or lost, (iii) the use of the Mortgaged Property or any part thereof for its present or future intended purpose or purposes will not be interrupted, lost or terminated, (iv) Mortgagor shall have set aside adequate reserves with respect thereto, and (v) Mortgagor shall have furnished such security as may be required in the proceedings or as may be reasonably requested by Mortgagee.

4.     INSURANCE.  Mortgagor shall keep the Premises, including all buildings, improvements and building materials encumbered hereby, and the contents thereof, constantly and adequately insured as may be reasonably required from time to time by the Mortgagee against loss by fire and such other hazards, casualties, and contingencies as may be reasonably required by the Mortgagee, including without limitation, business interruption insurance covering loss of rents, revenues, income, profits or proceeds from the Premises or from leases, franchises, licenses, or concessions of all or any part of the Premises.  Mortgagor shall obtain and maintain in force such other insurance coverage as Mortgagee may reasonably require, including but not limited to public liability insurance in the amount of $1,000,000.00.  The Mortgagor shall pay promptly when due, all premiums upon all such insurance.  All such insurance shall be carried in companies and under policies approved as to form by the

Mortgagee. All such insurance policies and renewals thereof shall be assigned to and held by the Mortgagee as collateral and further security for the indebtedness secured hereby and shall have attached thereto loss payable clauses in favor of and in form acceptable to the Mortgagee, without contribution by the Mortgagee, pursuant to the New York standard or other mortgagee clause acceptable to the Mortgagee. The amount of coverage under such hazard insurance policies shall be actual replacement value of the Premises, with a minimum 90% co-insurance clause; and, in the event that the terms of any policies or renewals of insurance hereunder require the Mortgagor to file periodic statements of values or to take any other action to assure that it will not violate the minimum 90% co-insurance provision, then the Mortgagor shall promptly make such filings or take such other action as may be required to make such assurances. Mortgagor shall furnish to the Mortgagee annually, within at least fifteen (15) days prior to the anniversary date of each policy, with copies of an endorsement evidencing an agreed amount of insurance or similar document issued with respect to the policies evidencing that the Mortgagor will not become a co-insurer. Not less than fifteen (15) days prior to the expiration date of each such policy of insurance the Mortgagor shall deliver to the Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of premium payment satisfactory to the Mortgagee. Such policies of insurance shall provide that the same may not be canceled except after thirty (30) days advance written notice of cancellation by the insurer to the Mortgagee. In the event of the foreclosure of this Mortgage, the purchaser of the Premises shall succeed to all the rights of the Mortgagor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to the Mortgagee pursuant to the provisions of this numbered paragraph. In the event of loss affecting all or any part of the Premises, the Mortgagor will give immediate notice thereof by mail to the Mortgagee. The Mortgagee may adjust or compromise any loss under any such hazard insurance policy and collect the proceeds therefrom. Each insurance company which issues any hazard insurance policy insuring the Premises or any part thereof is hereby authorized and directed to make payment for such loss directly to the Mortgagee instead of to the Mortgagor and the Mortgagee jointly, and the insurance proceeds, or any part thereof, after deducting expenses reasonably incurred in collecting same, may be applied by the Mortgagee, at its option, either to the reduction of the indebtedness hereby secured, whether or not then matured, or to the restoration or repair of the property damaged.

The provisions of this Paragraph 4 to the contrary notwithstanding, in the event of any loss or casualty to any of the improvements on the Premises, the Mortgagor shall be entitled to use all insurance proceeds payable as the result of such loss or casualty in order to repair and/or restore such improvements provided the following conditions are met:

(a)     Less than twenty five percent (25%) of the then fair market value of the improvements located on the Premises are damaged as a result of such loss or casualty;

(b)     Mortgagor is not in default under the terms of this Mortgage or any obligations secured hereby;

(c)     The insurance proceeds are paid into an escrow account with the Mortgagee;

(d)     The Mortgagor deposits into the escrow account described in (c) above, a sum necessary to complete the repairs and/or restoration (as determined by Mortgagee in its

reasonable opinion) in the event the insurance proceeds are insufficient to complete such repairs and/or restoration prior to commencing such repairs and/or restoration;

      (e)    All repairs and/or restorations are carried out pursuant to plans and specifications approved by the Mortgagee whose approval shall not be unreasonably withheld or delayed;

      (f)    The repairs and/or restoration can be completed (i) within twelve (12) months of the casualty or (ii) prior to the Maturity Date of the Mortgage Note, whichever is earlier;

      (g)    The proceeds held in escrow (both the insurance proceeds and the Mortgagor's proceeds) are disbursed in accordance with the Mortgagee's standard construction loan administration procedures; and

      (h)    Mortgagor shall be receiving rent loss or business interruption insurance in amounts sufficient to replace all income lost during the restoration period as a result of such casualty.

    5.    TAX AND INSURANCE DEPOSITS.  If required by the Mortgagee, the Mortgagor shall pay to the Mortgagee on the first day of each month until the Mortgage Note is fully paid, a sum equal to the premiums that will next become due and payable on policies of insurance required under this Mortgage, plus the taxes, assessments and other charges next due upon the Premises, all as estimated by the Mortgagee, less all sums already paid therefor, divided by the number of months to elapse before one (1) month prior to the date when each of such items will become payable. Such sums shall be held by the Mortgagee in escrow (but without liability of Mortgagee to pay interest thereon) to pay such insurance premiums, taxes, assessments, and other charges. The failure by the Mortgagor to make any such monthly payment as and when required under this numbered Paragraph shall constitute a default under the Mortgage. It is agreed, however, that Mortgagee shall not require monthly payments under this paragraph unless and until Mortgagor defaults in its obligations under the Loan Documents (whether or not such default is subsequently cured).

    Mortgagor shall furnish to the Mortgagee, not later than fifteen (15) days after receipt by Mortgagor, an official statement of the amount of all insurance premiums, taxes, assessments, and other charges next payable. The Mortgagee shall pay such items to the extent of the then unused escrowed funds on hand therefor, as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such expenses.

    If the total of the payments made by the Mortgagor under this numbered Paragraph shall exceed the amount of expenses actually paid by the Mortgagee for the purposes set forth herein, the Mortgagee shall credit such excess on subsequent payment to be made under this numbered Paragraph by the Mortgagor or shall refund such excess to the Mortgagor at the option of the Mortgagee. If, however, the monthly payments to be made under this numbered Paragraph by the Mortgagor shall not be sufficient to pay such items when the same shall become payable, then the Mortgagor shall pay to the Mortgagee any amount necessary to make up the deficiency five (5) days after notice. If at any time the Mortgagor shall tender to the Mortgagee, in

accordance with the provisions of the Mortgage Note secured hereby, full payment of the entire indebtedness represented thereby, the Mortgagee, in computing the amount of such indebtedness, and shall credit to the account of the Mortgagor any balance remaining in the funds so accumulated in escrow. The amount of the existing credit under this numbered Paragraph at the time of any transfer of the Premises shall, without the necessity for a separate assignment thereof or agreement relating thereto inure to the benefit of the successor-owner of the Premises and shall be applied under and be subject to all of the provisions of this numbered Paragraph. If there shall be a default under any of the provisions of this Mortgage resulting in a public sale of the Premises, or if the Mortgagee acquires the Premises otherwise after default, the Mortgagee may apply, at the time of the commencement of such a proceeding or at the time the Premises are otherwise acquired, the balance then remaining in escrow accumulated hereunder as a credit against the indebtedness remaining unpaid under the Mortgage Note.

6.     FORECLOSURE AND OTHER EXPENSES.     Mortgagor shall pay all and singular the costs, fees, and expenses of every kind and nature, including the Mortgagee's reasonable attorney's fees (including on appeal) and the cost of title evidence incurred or expended at any time by the Mortgagee in the collection of Mortgage debt and/or foreclosure on the Mortgage Note and Mortgage or otherwise incurred in protecting and preserving the lien of this Mortgage or in enforcing Mortgagee's rights under this Mortgage or under any other instrument evidencing and/or securing the indebtedness secured hereby, or in enforcing, sustaining, protecting, or defending the lien or priority of this Mortgage against any and all persons including, but not limited to, lien claimants or the exercise of the power of eminent domain or other governmental power of any kind. Every such payment made by or on behalf of the Mortgagee shall be immediately due and payable by the Mortgagor to the Mortgagee and shall bear interest from the date of disbursement thereof by the Mortgagee at the rate per annum then applicable under the Mortgage Note to sums of principal then outstanding and the same, together with such interest, shall be secured by the lien hereof. Nothing contained in this numbered Paragraph shall be construed as requiring the Mortgagee to advance or spend money for any of the purposes mentioned in this numbered Paragraph.

7.     CARE OF PROPERTY.     Consistent with the construction of improvements contemplated by the Loan Agreement, Mortgagor shall: permit, commit, or suffer no waste, impairment, or deterioration of the Premises or any part thereof and shall take all necessary steps to prevent same; permit, commit or suffer no mining, drilling, removal of sand, gravel, loam, or other materials, or excavations in, on or under the Premises, except excavations incident to construction of improvements on the Premises; keep the buildings and other improvements now or hereafter constituting a part of the Premises in as nearly as possible the same order and condition or repair as they now are or as they may be when placed upon the Premises, normal wear and tear excepted; do or permit to be done to the Premises nothing that will in any respect impair or weaken the security of this Mortgage in the reasonable opinion of the Mortgagee; and comply with, or cause to be complied with, all statutes, ordinances, regulations, and requirements of any governmental authority affecting the Premises or any part thereof or affecting the operation thereof. The Mortgagor shall promptly repair, restore, replace, or rebuild any part of the Premises, now or hereafter existing, which may be damaged or destroyed by fire or other casualty or which may be affected by any eminent domain proceedings or other governmental taking, but only to the extent that any insurance proceeds or condemnation awards resulting from such events have not been applied to the reduction of the indebtedness hereby secured. If any

work required under this numbered Paragraph shall involve an estimated expenditure exceeding One Hundred Thousand and 00/100 Dollars ($100,000.00), no such work shall be carried out except pursuant to plans and specifications approved by the Mortgagee in its reasonable discretion. No part of the Premises shall be removed, demolished, or materially altered without the written consent of the Mortgagee. No timber or other forest products shall be harvested or removed from the Premises without the Mortgagee's written consent. The Mortgagor shall not grant, join in, seek or consent to any right-of-way, easement, license, restrictive covenant, zoning ordinance, or other public or private restriction which affects or limits or defines the use which may be made of the Premises or any part thereof, and shall not grant, join in, seek or consent to any modification of any of the foregoing without the written consent of the Mortgagee.

Mortgagee may determine, in its reasonable discretion, whether the foregoing portions of this numbered Paragraph are being complied with and, for this purpose, the Mortgagee shall have the right to inspect the Premises at any reasonable hour of the day. In the event Mortgagee determines in its inspection that Mortgagor is violating the provisions of this Paragraph by deferring maintenance on the mortgaged premises, Mortgagee shall have the right to require Mortgagor to escrow with Mortgagee such funds as are necessary to correct said deferred maintenance.

8. PERFORMANCE OF LEASES. Mortgagor shall perform the covenants of the Mortgagor as lessor under any present and future leases affecting all or any part of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of the Mortgagor or the Mortgagee therein or thereunder. The Mortgagor without first obtaining the written consent of the Mortgagee thereto, shall not: assign the rents from the Premises or any part thereof; consent to the modification, cancellation or surrender of any lease or sublease of the Premises, or any part thereof, now existing or hereafter to be made, having an unexpired term of one (1) year or more (except in the ordinary course of converting the existing improvements into the condominium form of ownership); collect rents from the Premises or any part thereof, for more than two (2) months in advance; or enter into a lease which provides for rent based in whole or in part on the net income, net profits or net sales of any such lessee or sub-lessee. The Mortgagor shall procure and deliver to the Mortgagee at any time within thirty (30) days after notice and demand from Mortgagee, estoppel letters or certificates from each lessee, tenant, or occupant in possession of the Premises, as required by, and in form and substance satisfactory to the Mortgagee. The Mortgagor shall, upon request by the Mortgagee, furnish to the Mortgagee accurate copies of all leases affecting the Premises or any part thereof.

9. ASSIGNMENT OF RENTS. As additional security, the Mortgagor does hereby transfer, assign, and set over to the Mortgagee all of the Mortgagor's interest as lessor in any and all present and future leases, and any and all rents, issues and profits arising out of or accruing from the mortgaged property, now due or to become due from the Premises or any separate rental premises therein contained. In the event of a default hereunder by the Mortgagor, this assignment shall be absolute and become operative upon written demand from Mortgagee. Such rents shall be collected by or at the direction and under the control of the Mortgagee and the net proceeds thereof (net after payment of collection costs) shall be applied to the indebtedness secured hereby in such manner as the Mortgagee elects, as and when the same shall become due and payable. For the purpose of carrying out the provisions of this Paragraph, the Mortgagor

does by these presents constitute and appoint the Mortgagee as the Mortgagor's true and lawful attorney-in-fact, to collect any and all rents from the Premises, expressly authorizing the Mortgagee to receipt tenants therefor, and does by these presents ratify and confirm any and all acts of such attorney-in-fact in relation to the foregoing.

10.   ASSIGNMENT OF CONDEMNATION AWARDS.   Mortgagor hereby transfers, assigns, and sets over to the Mortgagee, up to the amount of the total indebtedness secured hereby, all awards of damages arising and all other sums paid or which become payable in connection with the condemnation of all or any part of the Premises for public use or for injury to any part thereof by any governmental body, quasi-public authority, or public utility, and the proceeds of all such awards, after payment of all reasonable expenses incurred in recovering same, including fees for attorneys representing the Mortgagee in any proceeding in which any such award is made, shall be paid to the Mortgagee. Notwithstanding any taking of all or any part of the Premises by eminent domain, or other injury to, or decrease in value of, the Premises by any governmental body, quasi-public authority, or public utility, the Mortgagor until such time as the mortgage debt is paid in full shall continue to pay and perform the obligations of this Mortgage and of the Mortgage Note secured hereby in the manner therein provided. Such awards or payments may, at the option of Mortgagee, be retained and applied by the Mortgagee toward payment of the indebtedness secured hereby in the manner designated by the Mortgagee, or be paid over, wholly or in part, to the Mortgagor for the purpose of altering, restoring, or rebuilding any part of the Premises which may have been altered, damaged, or destroyed as a result of any such taking, or other injury to the Premises. If, prior to the receipt by the Mortgagee of any such award or payment, the Premises shall have been sold on foreclosure of this Mortgage, the Mortgagee shall have the right to receive and retain such award or payment for application towards payment of any deficiency judgment which may be entered in favor of Mortgagee, together with interest applicable as set forth in the Mortgage Note thereon, and to the extent of the reasonable attorney fees (including on appeal), costs, and disbursements incurred by the Mortgagee in connection with the collection of such award or payment, and such right shall exist whether or not a deficiency judgment shall have been sought or recovered or denied upon the Mortgage Note, and the balance of such award or payment shall inure to the benefit of the party entitled thereto by applicable law.

11.   FURTHER DOCUMENTS AND ESTOPPEL CERTIFICATES.   Mortgagor shall execute and deliver to the Mortgagee, from time to time, upon demand, and pay the reasonable costs of preparation and recording thereof, any further instrument or instruments, including, but not limited to, mortgages, security agreements, financing statements, assignments, and renewal and substitution notes, so as to reaffirm, to correct, and to perfect the evidence of the obligations secured hereby and the security title of the Mortgagee to all or any part of the Premises intended to be hereby mortgaged, whether now mortgaged, later substituted for, or acquired subsequent to the date of this Mortgage and any extensions or modifications hereof. The Mortgagor, from time to time, upon request, shall certify by a writing, duly executed under oath, to the Mortgagee or to any actual or proposed assignee of this Mortgage, or to any other person, firm, or corporation specified by the Mortgagee, within ten (10) days after the mailing of such request to the Mortgagor, the following:

(a)   That the Mortgage Note secured hereby, this Mortgage, and all other instruments given to secure the indebtedness secured hereby are unmodified and in full force and

effect, and if there has been some modification, that the same is in full force and effect as modified and stating the modification;

(b)     The dates, if applicable, to which interest on the Mortgage Note and the taxes, insurance premiums, and other charges payable hereunder have been paid;

(c)     Whether the Mortgagor, to the best of the Mortgagor's knowledge and belief, is in default in the performance of any covenant, condition, or agreement on the Mortgagor's part to be performed under the terms of the Loan Documents, and, if so, stating specifically and in what manner or manners such default exists;

(d)     Whether or not any offsets or defenses exist against the Loan Documents and, if so, the specific nature and amounts thereof;

(e)     The amount of principal and interest then due and owing on the indebtedness evidenced and secured by the Loan Documents; and

(f)     Such other matters as the Mortgagee may reasonably request.

12.     DEFAULT. The occurrence of any one or more of the following events shall constitute a default under this Mortgage and the other Loan Documents:

(a)     Should the Mortgagor fail to make any payment payable by virtue of the Mortgage Note or the other Loan Documents within ten (10) days after the due date therefor;

(b)     Should any representation or warranty of the Mortgagor or the Guarantor herein contained, or contained in any of the Loan Documents, prove to be untrue or misleading in any material respect when made;

(c)     Should the Premises be subject to actual waste, or any part thereof be removed, demolished, or materially altered so that the value of the Premises be diminished, without Mortgagee's consent, except as a result of eminent domain proceedings;

(d)     Should any federal, state, or local tax lien, or any claim of lien for labor or materials, or any other lien, encumbrance, mortgage or other security instrument or judgment be filed of record against the Premises and not be removed by payment or transferred to bond in the manner provided by law within thirty (30) days from the date of recording;

(e)     Should any claim of priority to this Mortgage by title, lien, or otherwise be asserted in any legal, administrative, or equitable proceeding, and said claim remain pending in excess of sixty (60) days;

(f)     Should the Mortgagor or any Guarantor make any assignment for the benefit of creditors, file a petition in bankruptcy, is adjudicated insolvent or bankrupt, petitions or applies to any tribunal for any receiver of or trustee for it or any substantial part of its property, commences any proceeding under any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect;

(g)     There is commenced against Mortgagor or any Guarantor under any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect by any such act any proceeding which remains undismissed for a period of sixty (60) days;

(h)     Should the Mortgagor fail to maintain its existence in good standing;

(i)     Should Mortgagor default in the performance of any of the covenants, agreements and obligations of Mortgagor under the terms and conditions of this Mortgage, which default is not otherwise the subject matter of any other subparagraphs in this Paragraph 12, and such default is not curable, or if curable, continues for a period of thirty (30) days after notice of such default is delivered by Mortgagee to Mortgagor; or

(j)     Mortgagor or Guarantor defaults in the performance of any of its obligations under any of the other Loan Documents and such default continues after all applicable notice and cure periods, if any.

13.     REMEDIES UPON DEFAULT. Upon default, Mortgagee shall have the right to:

(a)     Take any action deemed expedient by the Mortgagee to protect the security of this Mortgage or to cure any default hereunder;

(b)     Declare all amounts evidenced and secured by the Loan Documents immediately due and payable without notice;

(c)     Foreclose this Mortgage in the manner provided by applicable law. Mortgagor hereby waives all rights of marshalling in the event of foreclosure of any lien or security interest created by this Mortgage. Further, in the event of foreclosure of any lien or security interest created by this Mortgage, Mortgagor may apply such foreclosure proceeds, in Mortgagor's sole discretion, to the debt secured by this Mortgage in any order and in any fashion whatsoever; or

(d)     Apply to a court of competent jurisdiction, for the appointment of a receiver to take charge of, manage, preserve, protect, complete construction of and operate the Premises and any business or businesses located thereon; to collect the assigned rents, issues, profits and income therefrom; to make all necessary and needed repairs to the Premises; to pay all taxes and assessments against the Premises and insurance premiums for insurance thereon; and after the payment of the expense of the receivership, including reasonable attorney's fees to the Mortgagee's attorney, and after compensation to the receiver for management and completion of the Premises, to apply the net proceeds derived therefrom in reduction of the indebtedness secured hereby or in such manner as such court shall direct. Mortgagor hereby consents and agrees to the appointment of such receiver after default, regardless of the value of the security for the indebtedness secured hereby or of the solvency of any party bound for the payment of such indebtedness. All expenses, fees and compensation incurred in connection with such receivership, shall be secured by the lien of this Mortgage until paid. The receiver and the receiver's agents shall be entitled to enter upon and take possession of any and all of the Premises, together with any and all businesses conducted thereon and all business assets used in conjunction therewith or thereon, or any part or parts thereof, and operate and conduct such

business or businesses to the fullest extent allowed by law and by the provisions of the order appointing receiver.

14.    TAXES UPON MORTGAGE, ETC.  In the event of the passage or adoption of any law, or in the event of any decision by a court of competent jurisdiction, creating or providing for any tax, assessment, or charge against the Premises, against this Mortgage, or against the indebtedness on undertakings secured hereby, or against any interest of the Mortgagee in the Premises, then, unless such tax be promptly paid by the Mortgagor and, in any event, if payment of such tax by the Mortgagor is prohibited by law, the entire indebtedness secured hereby shall, at the option of the Mortgagee, become immediately due and payable and, in the event payment of such indebtedness is not made by the Mortgagor within thirty (30) days after demand for payment, the Mortgagee may take, or cause to be taken, such action or proceeding as may be taken hereunder in the case of any other default in the payment of the indebtedness secured hereby; provided, that in respect to any taxes on the Mortgagee's interest in the Premises, or in this Mortgage, or in the indebtedness secured hereby, the Mortgagor shall not be required or bound to pay any amount which together with interest on the indebtedness secured, shall exceed the maximum interest rate allowed by applicable and enforceable law.

15.    TIME IS OF THE ESSENCE OF THIS MORTGAGE.  No waiver of any obligation hereunder or of any obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the terms of the Mortgage Note secured hereby.

16.    RIGHTS CUMULATIVE.  The rights of the Mortgagee granted and arising under the Loan Documents shall be separate, distinct, and cumulative of other powers and rights herein granted and of all other rights, which the Mortgagee may have in law or equity, and none of them shall be in exclusion of any other. No act of the Mortgagee shall be construed as an election to proceed under any provision of the Loan Documents to the exclusion of any other provisions, or an election of remedies to the bar of any other remedy allowed in law or equity.

17.    NOTICE.  All notices required herein or under the terms of any of the Loan Documents shall be in writing.  Whenever any notice, demand or request is required or permitted hereunder, such notice, demand or request shall be hand-delivered personally or sent by reputable overnight courier service (such as Federal Express) or certified mail by the United States Postal Service to the addresses set forth in the introductory paragraph of this Mortgage. Any notice or demand to be given hereunder shall be deemed sufficiently given for all purposes hereunder (1) at the time such notices or demands are hand-delivered, or (2) one day after depositing any such notice or demand with any reputable overnight courier service, or (3) three days after depositing any such notice or demand by certified mail with the United States Postal Service.  Any party hereto may change its address by notice in writing to the other parties in the manner herein provided.

18.    RELEASES BY MORTGAGEE.  Mortgagee may, from time to time, without notice to any person and without affecting the liability of the Mortgagor or of any other person (other than any person expressly released by the Mortgagee in writing) for the payment of any indebtedness secured hereby or for the performance of any obligation contained herein, and without affecting the priority or extent of the lien of this Mortgage (except as to property specifically released by the Mortgagee in writing) do any of the following:

      (a)    Release, voluntary or by operation of law, any person liable for payment of any indebtedness secured hereby or for performance of any obligation provided for herein;

      (b)    Accept additional security of any kind;

      (c)    Consent to the creation of any easement in, on, or over the Premises or any covenant restricting the use or occupancy of the Premises; and

      (d)    Release or otherwise deal with any property, real or personal, which secures the indebtedness secured hereby, including, without limitation, all or any part of the Premises.

     19.    CHANGE OF OWNERSHIP.  Except as contemplated by paragraph 35 of this Mortgage, if all or any part of the Property or an interest therein is sold, transferred or further encumbered (including the granting of any leasehold interest by Mortgagor), by Mortgagor without Mortgagee's prior written consent, it shall constitute a default under the Mortgage and Mortgagee may, at its option, declare all the sums secured by this Mortgage to be immediately due and payable.

     20.    SUCCESSORS AND ASSIGNS.  All covenants and stipulations in these presents contained shall bind the heirs, executors, administrators, legal representatives, successors, and assigns, as the case may be, of the Mortgagor and shall inure to the benefit of and be available to the successors and assigns of the Mortgagee.

     21.    GOVERNING LAW.  The terms and provisions of this Mortgage and of the other loan documents are to be governed by the laws of the State of Florida and the United States of America and in the event of a conflict, the law of the United States of America shall control.

     22.    SEVERABILITY.  If any provision of this Mortgage, or the other Loan Documents shall to any extent be finally found by a court of competent jurisdiction to be invalid or unenforceable, neither the remainder of the instrument in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other instrument referred to herein, shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law or equity.

     23.    DEFENSE OF ACTIONS BY MORTGAGOR.  Mortgagor shall, at its own cost and expense, defend, indemnify and hold Mortgagee and the lien of this Mortgage harmless from any action, proceeding or claim affecting the Premises or affecting the indebtedness secured hereby.  If Mortgagor neglects or refuses to carry out the covenants contained in this paragraph, the Mortgagee at its option may afford such defense and pay reasonable attorneys' fees, costs and expenses incurred in any such defense at trial or appellate or in private settlement proceedings.  All such payments, plus interest thereon from the time of payment at the rate applicable under the Mortgage Note upon sums outstanding thereunder after maturity shall be deemed a part of the indebtedness secured hereby and shall be immediately due and payable by the Mortgagor to the Mortgagee.

     24.    SINGULAR, PLURAL, ETC.  As used herein, the terms "Mortgagor" and "Mortgagee" shall include the singular and the plural, and shall include the masculine, feminine

and neuter genders. The plural shall include the singular, and the singular shall include the plural in all applicable instances.

25.   CURING OF DEFAULTS BY MORTGAGEE. Mortgagee shall have the right, but not the duty, to pay any sums required to be paid and to take any other action deemed by the Mortgagee to be necessary or convenient to cure any default of the Mortgagor under this Mortgage. Any and all sums expended or expenses incurred by the Mortgagee in so curing defaults shall become immediately due and payable by the Mortgagor to the Mortgagee and, together with interest thereon from date of disbursement at the rate applicable to sums outstanding under the Mortgage Note from and after the maturity date therein contained and shall be secured by the lien of this Mortgage. The Mortgagee shall be subrogated to the interest of any lien holder paid by Mortgagee pursuant to the provisions of this paragraph.

26.   ACTION ON MORTGAGE NOTE. Mortgagee shall either be entitled to sue and recover judgment upon the Mortgage Note before, after, or during the pendency of any proceeding for the enforcement of this Mortgage. The Mortgagor agrees that no recovery of a judgment upon the Mortgage Note, and no attachment or levy of any execution upon any such judgment upon any of the Premises, shall in any manner, or to any extent, affect the lien of this Mortgage or any of the rights, powers, or remedies of the Mortgagee hereunder.

27.   WAIVER. No delay or omission by the Mortgagee to exercise any right, power or remedy accruing upon any default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such default or acquiescence therein. Every right, power and remedy given by this Mortgage to the Mortgagee may be exercised from time to time and as often as may be deemed expedient by the Mortgagee. No waiver of any default hereunder shall extend to or shall affect any subsequent or any other then existing default or shall impair any right, power or remedy consequent thereon.

28.   MODIFICATIONS, ETC. ONLY IN WRITING. This Mortgage may not be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

29.   BOOKS AND RECORDS. Mortgagor shall maintain full and correct books and records showing in detail the income, expenses and earnings relating to the Premises, and to permit Mortgagee's representative to examine such books and records and all supporting vouchers and data at any time and from time to time as the Mortgagee may reasonably request at such place within the United States of America as such books and records are customarily kept. Additionally, Mortgagor shall submit, or cause to be submitted, to the Mortgagee such additional financial information as may be required pursuant to the terms of the Loan Agreement.

30.   JOINT AND SEVERAL OBLIGATIONS. All agreements herein made by the Mortgagor are binding upon and enforceable against the persons named herein as Mortgagor jointly and severally.

31.   NO ILLEGAL INTEREST TO BE CHARGED. All agreements between the Mortgagor and the Mortgagee under the Loan Documents and Loan Commitment are expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to the holder of the Mortgage Note for the use, forbearance or detention of the money to be

advanced hereunder exceed the highest lawful rate permissible under applicable law. If, from any circumstances whatsoever, fulfillment of any provisions of the Loan Documents and Loan Commitment, at the time performance of such provision shall be due, shall involve payment of interest at a rate which exceeds the highest lawful rate as so determined, then ipso facto the obligation to be fulfilled shall be reduced to such highest lawful rate. If, from any circumstances whatsoever, the holder of the Mortgage Note secured hereby shall ever receive interest, the amount of which would exceed such highest lawful rate, the portion thereof which would be excessive interest shall be deemed applied to the reduction of the unpaid principal balance due under such Mortgage Note and not to the payment of interest or handled as otherwise provided by law.

32.   STORAGE/USE OF POLLUTANTS, CONTAMINANTS, HAZARDOUS OR TOXIC SUBSTANCES. Mortgagor hereby represents and warrants to Mortgagee to the best of its knowledge, based upon a diligent review of all applicable records, history of use of the Property and adjacent properties and environmental audits, if necessary, that: (a) no pollutants, contaminants, or hazardous or toxic substances, including, but not limited to, oil, petroleum, petroleum by product, chemical liquids or solids, liquid or gaseous products, within the meaning of any applicable statute or regulation (hereinafter sometimes referred to as "Substances"), are presently stored or otherwise located on or under the Property or on or under any adjacent and contiguous real property owned by Mortgagor or any related entity or affiliate of Mortgagor; (b) no release or discharge of any Substances has occurred on the Property or on any adjacent and contiguous real property owned by Mortgagor or any related entity or affiliates of Mortgagor; (c) no part of the Property or any adjacent and contiguous real property owned by Mortgagor or any related entity or affiliate of Mortgagor, including the groundwater located thereon, is presently contaminated by such Substances; and (d) Mortgagor has not received any notice from any governmental agency or authority or from any tenant under a lease with respect to any release or discharge of such Substances onto the Property or adjacent parcels of real estate.  Mortgagor further covenants and agrees with Mortgagee that, throughout the term of the Mortgage Note (i) all pollutants, contaminants, or hazardous or toxic substances, including, but not limited to, oil, petroleum, petroleum by product, chemical liquids or solids, liquid or gaseous products, within the meaning of any applicable statute or regulation, which may be used by any person for any purpose upon the Property, shall be used or stored thereon only in a safe and approved manner, in accordance with all industrial standards and all laws, regulations and requirements for storage, use, treatment and disposal promulgated by any applicable governmental agency or authority; (ii) other than as described in (i) above, the Property will not be used for the purpose of storing such Substances; and (iii) other than as described in (i) above, no such storage or use will otherwise be allowed on the Property which will cause, or which will increase the likelihood of causing, the release of such Substances onto the Property.  Mortgagor hereby agrees to indemnify and save and hold Mortgagee harmless of and from all loss, cost (including reasonable attorney's fees, fines, penalties and permit fees), liability and damage whatsoever incurred by Mortgagee arising out of or by reason of any violation of any applicable statute or regulation for the protection of the environment which occurs upon the Property, or by reason of the imposition of any governmental lien for the recovery of environmental clean-up costs expended by reason of such violation; provided that, to the extent that Mortgagee is strictly liable under any such statute or regulation, Mortgagor's obligation to Mortgagee under this indemnity shall likewise be without regard to fault on the part of Mortgagor with respect to the violation of law which results in

liability to Mortgagee. A default under this paragraph shall constitute an Event of Default under this Mortgage.

33.    COMMITMENT LETTER.  The Mortgage Note evidences a loan made pursuant to that certain Loan Commitment Letter from Mortgagee to Mortgagor, dated December 28, 2005. The terms of said Loan Commitment Letter are hereby incorporated by reference herein. However, in the event of any conflict between the terms of this Mortgage and the terms of the Loan Commitment Letter, the terms of this Mortgage shall control.

34.    APPRAISALS.  Mortgagor covenants and agrees that Mortgagor shall furnish an appraisal of the Property when required by the regulations of the Federal Reserve, the Federal Deposit Insurance Corporation  or any other agency which regulates Mortgagee, or at such other times as the Mortgagee may reasonably require.  Such appraisal or appraisals shall be performed by an independent third party appraiser selected by the Mortgagee.  The cost of such appraisal shall be paid by the Mortgagor.  If requested by the Mortgagee, the Mortgagor shall execute an engagement letter addressed to the appraiser selected by the Mortgagee; provided, however, that Mortgagor's failure or refusal to sign such engagement letter shall not impair Mortgagee's right to obtain such appraisal.  Mortgagor shall pay the cost of such appraisal within ten days after receipt of an invoice for such appraisal.

35.    PARTIAL RELEASES.  As set forth in the Loan Agreement, Mortgagor contemplates developing a portion of the Property as a condominium project.  Mortgagee shall release in accordance with the provisions described in the Loan Agreement and as hereinafter set forth, from the lien of this Mortgage such of the "Units" (as that term is defined in such Loan Agreement) as may be requested in writing by Mortgagor upon the sale of such Units. Mortgagor shall be entitled to releases under this paragraph only if the following conditions are fully satisfied at the time such release is requested:

(a)    There is no default in the Mortgage Note secured hereby or in this Mortgage, nor shall any event have occurred which with notice and/or passage of time could result in a default under the Mortgage Note or this Mortgage.

(b)    All costs of preparing and recording such partial releases are paid by Mortgagor.

(c)    Mortgagor shall have submitted the Property to the condominium form of ownership pursuant to a declaration of condominium approved by Lender, whose approval shall not be unreasonably withheld, and Lender shall have received an ALTA 4.1endorsement to its Loan Policy of Title Insurance insuring the lien of this Mortgage.

(d)    Mortgagor pays to Mortgagee a release price as set forth in the Loan Agreement, which shall be applied to the principal balance outstanding then remaining under the Mortgage Note secured hereby in the manner set forth in the Loan Agreement.

36.    WAIVER OF JURY TRIAL.  MORTGAGOR AND MORTGAGEE, JOINTLY AND SEVERALLY, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF EITHER PARTY.    THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ACCEPTING THIS MORTGAGE FROM MORTGAGOR.

IN WITNESS WHEREOF, Mortgagor has duly signed, sealed and executed this mortgage in the presence of the subscribing witnesses the day and year first above written.

Signed, sealed and delivered
in the presence of:

"MORTGAGOR"

WATERS PLACE 26, LLC, a Florida limited liability company

Name: _Michele A. EASTON_

By: Aba 26 Management Corporation, a Florida corporation, its Manager

Name: _Rebecca L. Henderson_

By: _____
Name: Abbey Berkowitz
Title:  Vice President

Address:    4434 N. Bay Road
Miami Beach, FL 33140

STATE OF FLORIDA
COUNTY OF _Broward_

The foregoing instrument was acknowledged before me this _3rd_ day of March, 2006, by Abbey Berkowitz, the Vice President of Aba 26 Management Corporation, a Florida corporation, as Manager of Waters Place 26, LLC, a Florida limited liability company, on behalf of the corporation and the company.  He *(check one)* ☒ is personally known to me, or ☐ has produced a valid driver's license as identification.

Notary Public, State of Florida
Name: _Rebecca L. Henderson_
My Commission Expires: _October 8, 2006_
My Commission Number is: _DD 155 765_

REBECCA L. HENDERSON
MY COMMISSION # DD 155765
EXPIRES: October 8, 2006
1-800-3-NOTARY   FL Notary Service & Bonding, Inc.

# Exhibit A

Lots 1 to 26, inclusive, Block 2, LESS right-of-way for Waters Avenue; Lots 1 to 5 inclusive, and Lots 22 to 26, inclusive, Block 3, Lots 1 to 26, inclusive, Block 17, Lots 1 to 26, inclusive, Block 18, Lots 1 to 26, inclusive, Block 19, all in RIO VISTA, according to the map or plat thereof, as the same is recorded in Plat Book 27, page 9, of the public records of Hillsborough County, Florida, TOGETHER WITH vacated streets. The East 1/2 of vacated Hale Avenue (Chrysanthemum on Plat) between Lots 22 through 26, Block 2, and Lots 1 through 5, Block 3, and the West half of the portion of Hale Street between Lots 22-26, Block 2 and Lots 1-5, Block 3, and the East half of the portion of Hale Street to the West of Lots 17-21, Block 2, the East 1/2 of vacated Clark Street (Gladiola Plat) abutting Lots 22 through 26, in Block 3, the South 1/2 of vacated Juneau Street (Licurance on Plat) abutting Lots 13 and 14, in Block 17, all of vacated Juneau Street (Licurance on Plat) lying East of the centerline of Clark Street and West of the West right-of-way of Blossom Avenue and all of vacated Clark Street between Blocks 17 and 18, all of vacated Hale Avenue, between Blocks 18 and 19, all in RIO VISTA SUBDIVISION, according to the map or plat thereof, as the same is recorded in Plat Book 27, page 9,  of the public records of Hillsborough County, Florida. LESS right-of-way for Waters Avenue.

Parcel Identification Number: U-28-28-18-16R-000002-00001.0

INSTRUMENT#: 2008275911, BK: 18789 PG: 41 PGS: 41 - 43 08/04/2008 at 04:42:15
PM,   DEPUTY CLERK: ASCOTT Pat Frank, Clerk of the Circuit Court Hillsborough
County

THIS IS NOT A
CERTIFIED COPY

This instrument prepared by and return to:
Paul Young, Esq.
HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: That Compass Bank, an Alabama banking corporation, whose address is c/o Frank Heuszel, Senior Vice President, 24 Greenway Plaza, Suite 1601, Houston, Texas 77046 ("Lender") holder of that certain Mortgage and Security Agreement, to Altamonte 26, LLC, a Florida limited liability company and as assumed by ADMG Altamonte 26, LLC, a Florida limited liability company in that certain Special Warranty Deed recorded in Official Records Book 18544, Page 1886 through 1886 on April 3, 2008 in the public records of Hillsborough County, Florida, whose address is 24 Greenway Plaza, Suite 1601, Houston, TX 77046, ("Mortgagor") dated March 3, 2006 and recorded March 6, 2006, in Official Records Book 16184, Page 1331, of the Public Records of Hillsborough County, Florida, (the "Mortgage") securing a certain Promissory Note in the original principal sum of Sixteen Million Four Hundred Fifty Thousand and No/100 Dollars ($16,450,000.00) ("Note"), which promises and obligations set forth in said Mortgage, upon the property situate in said state and county described in said Mortgage, hereby releases the Mortgage from that certain property described in Exhibit "A" and hereby directs the Clerk of the said Circuit Court to cancel the same of record only as to said property set forth in Exhibit "A".

This Release of Mortgage will also serve to release the premises described in said Exhibit "A", together with any personal property or fixtures located on or within the same, from the lien and charge of that certain Mortgage set forth herein. Lender furthermore warrants that its execution of this Release of Mortgage is not intended to evidence satisfaction of the Note and Mortgage.

Witness my hand and seal, this August ____ , 2008.

Compass Bank, an Alabama banking
corporation

By: _____
Frank D. Heuszel
Senior Vice President


EXHIBIT
B

THIS IS NOT A
CERTIFIED COPY

STATE OF TEXAS

COUNTY OF HARRIS

The foregoing instrument was acknowledged before me this August _July_ _28_, 2008 by Frank D. Heuszel,
Senior Vice President of Compass Bank, an Alabama banking corporation who is personally known by
me.

SYLVIA A. SALAZAR
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires
APRIL 11, 2009

_Sylvia A. Salazar_
NOTARY PUBLIC

_Sylvia A. Salazar_
PRINTED NAME OF NOTARY

My commission expires:

# 4030870_v1

THIS IS NOT A
CERTIFIED COPY

EXHIBIT "A"

**LEGAL DESCRIPTION**

PARCEL 1: The East 1/2 of the North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 21, Township 28 South, Range 18 East, Hillsborough County, Florida LESS the South 100.00 feet thereof and LESS the right-of-way for Himes Avenue.

PARCEL 2:

That part of the East 1/2 of the Southeast 1/4 of the Northeast 1/4 of Section 21, Township 28 South, Range 18 East, Hillsborough County, Florida, lying South of the Seaboard Coastline Railroad right-of-way and being more particularly described as follows:

From the Southeast corner of the Southeast 1/4 of the Northeast 1/4 of Section 21, Township 28 South, Range 18 East, Hillsborough County, Florida, run West 25.00 feet along the South boundary of the Southeast 1/4 of the Northeast 1/4 of said Section 21 to the West right-of-way line of Himes Avenue and the POINT OF BEGINNING; thence West 409.62 feet along said South boundary; thence N. 00° 32' 30" E., 357.54 feet; thence S. 89° 33' 30" E., 207.82 feet; North 00° 26'30" E 338.79 feet; thence S. 89° 33' 30" E., 179.37 feet to the proposed Westerly right-of-way line for additional right-of-way for Himes Avenue; thence Southerly, 151.75 feet along the arc of a curve to the left, having a radius of 2325.83 feet, a central angle of 03° 44' 18", and a chord bearing and distance of S. 02° 37' 10" W., 151.72 feet along said proposed Westerly right-of-way line to a point of compound curvature; thence Southerly, 190.84 feet along the arc of a curve to the left, having a radius of 1168.92 feet, a central angle of 09° 21' 15", and a chord bearing and distance of S. 03° 55' 36" E., 190.63 feet along said proposed Westerly right-of-way line to a point of reverse curvature; thence Southerly 142.91 feet along the arc of a curve to the right, having a radius of 1122.92 feet, a central angle of 07° 17' 31", and a chord bearing and distance of S. 04° 57' 28" E., 142.82 feet along said proposed Westerly right-of-way line; thence S. 00° 33' 10" W., 209.30 feet along the existing Westerly right-of-way line of Himes Avenue to the POINT OF BEGINNING.

PARCEL 3:

TOGETHER WITH DRAINAGE EASEMENT OVER, UNDER, ACROSS AND THROUGH THE FOLLOWING DESCRIBED PROPERTY:

A parcel of land lying in the East 1/2 of the Southeast 1/4 of the Northeast 1/4 of Section 21, Township 28 South, Range 18 East, Hillsborough County, Florida, said parcel being more particularly described as follows:

From the Southeast corner of the Southeast 1/4 of the Northeast 1/4 of said Section 21, run thence West, 25.00 feet along the South boundary of the said Southeast 1/4 of the Northeast 1/4 of Section 21 to a point on the West right-of-way line of Himes Avenue; thence along said West right-of-way line N. 00° 33' 10" E., 209.30 feet; thence along the proposed additional right-of-way line of Himes Avenue the following three (3) courses: 1) Northerly, 142.91 feet along the arc of a curve to the left having a radius of 1122.92 feet and a central angle of 07° 17' 31" (chord bearing N. 04° 57' 28" W., 142.82 feet) to a point of reverse curvature; 2) Northerly, 190.84 feet along the arc of a curve to the right having a radius of 1168.92 feet and a central angle of 09° 21' 15" (chord bearing N. 03° 55' 36" W., 190.63 feet) to a point of compound curvature; 3) Northerly, 142.22 feet along the arc of a curve to the right having a radius of 2325.83 feet and a central angle of 03° 30' 13" (chord bearing N. 02° 30' 08"E., 142.20 feet) to the POINT OF BEGINNING; thence N. 89° 34' 23" W., 178.72 feet; thence N. 00° 26' 30" E., 25.00 feet; thence S. 89° 34' 23" E., 180.52 feet to a point on the aforesaid proposed additional right-of-way line of Himes Avenue; thence along said line Southerly 25.07 feet along the arc of a curve to the left having a radius of 2325.83 feet and a central angle of 00° 37' 03" (chord bearing S. 04° 33' 46" W., 25.07 feet) to the POINT OF BEGINNING.

# 5474244_v1

 **Compass Bank**

Compass Bank
P. O. Box 4444
Houston, TX 77210-4444

July 3, 2008

VIA FACSIMILE

Waters Place 26, LLC
c/o Barry Appell
3735 SW 8th St, Suite 105
Coral Gables, FL 33134

RE:  Indebtedness of Waters Place 26, LLC to Compass Bank.

Dear Barry,

Subject to the terms of our previously executed modification agreement and in addition to the other communications of today, Compass Bank has agreed to extend the payoff/settlement offer of $9 million for 45 days from July 3, 2008.  If the payoff is extended beyond 45 days from July 3, 2008 but before 60 days from July 3, 2008, then the payoff/settlement is $9,050,000.  No payoff/settlement of the debt is offered beyond the 60 day time frame or September 1, 2008.

This letter is sent to you to assist you in your efforts to manage and to presumably liquidate the collateral securing the indebtedness with Compass Bank.  This communication is intended for your sole use and is not intended to create any third party beneficiary.  Any necessary modifications to existing agreements that may be necessary to reconfirm this agreement can be completed once the Bank's counsel has returned from vacation.

Sincerely,

Frank D. Heuszel
Senior Vice President
Compass Bank

**EXHIBIT**

C

6/29/ 08 SUN 19:59          (          115016460011          # 27  3

## REINSTATEMENT AND FIRST AMENDMENT TO CONTRACT

THIS REINSTATEMENT AND FIRST AMENDMENT ("Reinstatement") is made and entered into the _24_ day of June, 2008 by and between WATERS PLACE 26, LLC, a Florida limited liability company ("*Seller*"), and BLUE ROCK PARTNERS, LLC, a Florida limited liability company ("*Purchaser*").

### RECITALS:

A.    Whereas, Seller and Purchaser entered into a Contract dated April 14, 2008 (the "Contract") to sell and purchase that certain real property known as Laguna Park Apartments, consisting of a 180 unit apartment community located at 4014 W. Waters Avenue, Tampa, Florida, a copy of which Contract is attached hereto and made a part hereof as Exhibit "A" (Any capitalized term not otherwise defined in this Reinstatement shall have the meaning ascribed to such term under the Contract.);

B.    Whereas, pursuant to the terms of Article III, Paragraph C, of the Contract, Purchaser terminated the Contract by notice dated May 13, 2008 and the Escrow Agent returned the Deposit to Purchaser in accordance therewith; and

C.    Whereas, Purchaser and Seller now desire to reinstate, as of the date hereof, and amend the Contract, as specified below.

NOW THEREFORE, for and in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby conclusively acknowledged, Purchaser and Seller hereby agree as follows:

1.    The Contract is reinstated and is in full force and effect as modified by this Reinstatement.

2.    The Purchase Price under the Contract is hereby amended to TEN MILLION SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($10,750,000.00).

3.    The Closing Date under the Contract is hereby amended to on or before sixty (60) days following the date of the full execution of this Reinstatement, provided that Purchaser shall provide to Seller at least five (5) days prior written notice of the anticipated date for such Closing.

4.    Article XIV of the Contract is hereby amended to provide that the NAI Commission due to the Transaction Broker shall be SEVENTY-FIVE THOUSAND AND 00/100 ($75,000.00), which NAI Commission shall be payable by Purchaser at and upon Closing.



EXHIBIT

D



5.     Within five (5) business days of the date of the full execution of this Reinstatement (the "Rescission Period") Seller shall provide to Purchaser the following items (the "Authorizations"), which Authorizations are to be acceptable to Purchaser, in Purchaser's sole and absolute discretion:

     a.  written proof and confirmation that Seller's existing lender has approved the purchase and sale of the Property pursuant to the terms and conditions of the Contract as amended by this Reinstatement, and

     b.  a written estoppel confirming that Seller's lender has agreed to accept a payoff of less than $10,000,000.00 as full and complete satisfaction of any and all mortgages and/or other encumbrances against the Property by or in favor of such lender.

Upon Seller delivering the foregoing Authorizations (which Authorizations are to be acceptable to Purchaser, in Purchaser's sole and absolute discretion) to Purchaser within the Rescission Period, Purchaser shall then have two (2) business days to deposit with the Escrow Agent FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) to be again held as the Deposit under the Contract. In the event Seller fails to deliver to Purchaser the foregoing Authorizations within the Rescission Period, or if such Authorizations are not acceptable to Purchaser, in Purchaser's sole and absolute discretion, Purchaser, at its sole option and discretion, may then terminate and void the Contract, as amended by this Reinstatement, by delivering written notice thereof to Seller, and thereafter the parties shall have no further obligations thereunder.

6.     The Purchaser and Seller acknowledge and agree that the Inspection Period under the Contract has expired. Accordingly, upon making the Deposit as set forth under Paragraph 5 hereinabove, such Deposit shall then be deemed non-refundable, subject only to any title or survey matters to be cleared and released by Seller in accordance with the Contract, and further subject to any default by Seller under the Contract.

7.     The Contract, as expressly modified by this Reinstatement, shall be reinstated and continue in full force and effect in accordance with its terms. Where the terms of the Contract and the terms of this Reinstatement conflict, the terms of this Reinstatement shall govern.

8.     This Reinstatement may be executed by facsimile signatures in multiple counterparts, and by the parties hereto on separate counterparts, and each counterpart, when so executed and delivered (whether by facsimile or otherwise), shall constitute an original agreement, and all such separate counterparts shall constitute one and the same agreement.

[Signatures to follow on next page]

2

6/29/'08 SUN 15:59

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, sealed and delivered the day and year first above written.

Seller:

WATERS PLACE 26, LLC, a Florida limited liability company

By: _____

Name: BARRY APPEL

Title: _____

[Company Seal]

Purchaser:

BLUE ROCK PARTNERS LLC,
a Florida limited liability company

By: _____
Reuven Oded, Manager

[Company Seal]

3

THIS IS NOT A CERTIFIED COPY

### ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

**KNOW ALL PERSONS BY THESE PRESENTS:** That Compass Bank, an Alabama banking corporation, in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, and other valuable consideration received from or on behalf of Edgefield District Mortgage Trust, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto Edgefield District Mortgage Trust, with full power in such assignee to assign, hypothecate, release, satisfy, or foreclose such mortgage, all of Compass Bank's right, title and interest in and to that certain Mortgage dated March 3, 2006, and recorded on March 3, 2006, in Official Records Book 16184, Page 1527 of the Public Records of Hillsborough County, Florida, securing the sum of FOURTEEN MILLION SEVEN HUNDRED THOUSAND AND NO/100 DOLLARS ($14,700,000.00), encumbering those certain pieces or parcels of land, situate and being in Hillsborough County, Florida, more particularly described as follows:

### SEE ATTACHED EXHIBIT A

This assignment includes any and all other loan documents, title policies and casualty insurance policies as may be more specifically set forth in the Mortgage Loan Purchase Agreement between the parties.

**TO HAVE AND TO HOLD** the same unto Edgefield District Mortgage Trust and its legal representatives, successors and assigns forever. This assignment is as-is, without recourse, warranty or representation by Compass Bank except as expressly set forth in the Mortgage Loan Purchase Agreement between Compass Bank and the Fairway Capital, LLC effective August 5, 2008.

**IN WITNESS WHEREOF,** party of the first part has set its hand and seal this _13_ day of August, 2008.

Signed, sealed and delivered in our presence:

Print name: JIM M. LITTLE

Print name: Rachel Magner

**COMPASS BANK**

By: _C French Yarbrough_

C. French Yarbrough, Jr.
Senior Vice President



EXHIBIT

F



THIS IS NOT A CERTIFIED COPY

**Exhibit A**

Lots 1 to 26, inclusive, Block 2, LESS right-of-way for Waters Avenue; Lots 1 to 5 inclusive, and Lots 22 to 26, inclusive, Block 3, Lots 1 to 26, inclusive, Block 17, Lots 1 to 26, inclusive, Block 18, Lots 1 to 26, inclusive, Block 19, all in RIO VISTA, according to the map or plat thereof, as the same is recorded in Plat Book 27, page 9, of the public records of Hillsborough County, Florida, TOGETHER WITH vacated streets. The East 1/2 of vacated Hale Avenue (Chrysanthemum on Plat) between Lots 22 through 26, Block 2, and Lots 1 through 5, Block 3, and the West half of the portion of Hale Street between Lots 22-26, Block 2 and Lots 1-5, Block 3, and the East half of the portion of Hale Street to the West of Lots 17-21, Block 2, the East 1/2 of vacated Clark Street (Gladiola Plat) abutting Lots 22 through 26, in Block 3, the South 1/2 of vacated Juneau Street (Lieurance on Plat) abutting Lots 13 and 14, in Block 17, all of vacated Juneau Street (Lieurance on Plat) lying East of the centerline of Clark Street and West of the West right-of-way of Blossom Avenue and all of vacated Clark Street between Blocks 17 and 18, all of vacated Hale Avenue, between Blocks 18 and 19, all in RIO VISTA SUBDIVISION, according to the map or plat thereof, as the same is recorded in Plat Book 27, page 9, of the public records of Hillsborough County, Florida. LESS right-of-way for Waters Avenue.

Parcel Identification Number: U-28-28-18-16R-000002-00001.0

THIS IS NOT A CERTIFIED COPY

STATE OF FLORIDA      )
                      :  ss.
COUNTY OF DUVAL       )

The foregoing instrument was acknowledged before me this $\underline{13^{th}}$ day of August, 2008, by C. French Yarbrough, Jr., as Senior Vice President of Compass Bank, an Alabama banking corporation, who is <u>personally known</u> to me or who has produced _____ (type of identification) as identification and who did not take an oath.

_____
Signature of person taking acknowledgment
Danielle Tirad
Name of acknowledger typed, printed or stamped
Notary Public
Title or rank



DANIELLE SANDRA TIRADO
.................... # DD497952
........ Dec 8, 2009
(407) 398-0153    Florida Notary Service.com

This Instrument Prepared By:
      Mark R. King, Esq.
      Miller, Hamilton, Snider & Odom, L.L.C.
      799 Brickell Plaza, Suite 701
      Miami, FL 33131
      Tel.  (305) 961-2800
      Fax  (305) 372-0180