UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WATERS PLACE 26, LLC,

    Plaintiff,

v.                                            Case No. 8:09-cv-2418-T-24-EAJ

COMPASS BANK,

    Defendant.
_____/

## ORDER

The Court now considers: (1) Defendant's Motion to Dismiss (Doc. 14); (2) Defendant's Motion to Strike Plaintiff's demands for jury trial, for attorney's fees, and for punitive damages (Doc. 14); and Plaintiff's Motion to Amend (Doc. 18). Plaintiff opposes the Motions to Dismiss and to Strike (Doc. 16), and Defendant opposes the Motion to Amend (Doc. 19). Defendant has also filed a reply (Doc. 24).

## I. Standard of Review

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Because of the liberal policy allowing amendments embodied in Rule 15(a), "a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party; (2) there has been bad faith or undue delay on the part of the moving party; or (3) the amendment would be futile." *Taylor v. Florida State Fair Authority*, 875 F. Supp. 812, 814 (M.D. Fla. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In deciding a motion to dismiss, a court is required to view the complaint in the light

most favorable to the plaintiff. *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000). Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Although Rule 8 does not require a claimant to set out in detail the facts upon which he bases his claim, it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief. *Id.* While the court must assume that all of the factual allegations in the complaint are true, this assumption is inapplicable to legal conclusions. The door to discovery will not open for a plaintiff "armed with nothing more than legal conclusions." *Id.* at 1950. But where a complaint contains well-pleaded facts, if those facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint stops short of plausibility and does not show the plaintiff is entitled to relief. *Id.*

## II. Background

In its original Complaint (Doc. 2), Plaintiff Waters Place 26, LLC ("Waters Place") alleged the following: Waters Place is a Florida limited liability company. Waters Place and its sister company, Altamonte 26, LLC ("Altamonte"), are managed by ABA 26 Management Corporation ("ABA").[1] ABA manages and owns companies that acquire and renovate multi-

---

[1] The Court notes that in its original Complaint, Waters Place claimed to be managed by "ABBA 26 Management Corporation," but in the Proposed Amended Complaint, the entity is named "ABA 26 Management Inc." According to Florida's Department of State, Division of Corporations' website, the actual name is "ABA 26 Management Corporation." *See* www.sunbiz.org. Here, and for the remainder of this order, the entity is and will be referred to

2

family apartment buildings.

Defendant Compass Bank ("Compass") financed the two loans at issue in this action—one between Compass and Waters Place (the "Waters Mortgage") and the other between Compass and Altamonte (the "Altamonte Mortgage"). ABA is comprised of three directors/officers: Hector Aragon, Abbey Berkowitz, and Barry Appel. The ABA directors personally guaranteed the Waters Mortgage, the Altamonte Mortgage, and two other Compass loans. Until the events that catalyzed the present action, the ABA directors had a long-standing positive business relationship with Compass.

With the downturn in the Florida real estate market, the ABA directors approached Compass to renegotiate the Waters and Altamonte Mortgages. Compass and the ABA directors agreed that Altamonte would transfer all of its interests in its mortgaged property to Compass (a "Deed in Lieu"). In exchange, Compass would release Waters Place from the Waters Mortgage via short sale for a payoff of less than the $10,000,000 that was still outstanding on the Waters Mortgage (the "Short Sale"). At all times, the ABA directors made known to Compass that all negotiations included both the Waters and Altamonte Mortgages and that the Deed in Lieu with Altamonte was given in consideration for Compass allowing the Short Sale of the Waters Place Property.

In furtherance of this agreement, Altamonte complied with all of Compass's requirements for the Deed in Lieu. The Deed in Lieu was executed, and Altamonte transferred all of its interests in its mortgaged property to Compass. To effectuate the Short Sale of the Waters Place Property (the "Property"), Waters Place actively marketed the Property and found a

as "ABA."

buyer (the "Prospective Buyer").  Waters Place informed Compass of the Prospective Buyer and requested that Compass send confirmation that it would accept a payoff of less than $10,000,000 for the Waters Mortgage.  Compass, through its agents, represented that it would accept such a payoff as long as the Short Sale was consummated by September 1, 2008.

Waters Place and the Prospective Buyer executed a purchase and sale agreement for the Property in the amount of $10,750,000, and Waters Place intended to close on the sale before the end of August, 2008.  Compass had full knowledge of these negotiations.  However, on August 13, 2008, unbeknownst to Waters Place or the ABA directors, Compass sold and assigned the Waters Mortgage to a third party, Edgefield District Mortgage Trust ("Edgefield").  The assignment price was well below the sale price agreed to by Waters Place and the Prospective Buyer.

One week later, on August 21, 2008, Compass's attorney informed Waters Place of the assignment via e-mail.  But Compass did not inform Edgefield of its arrangement with Waters Place regarding the Short Sale.  As a result of the assignment of the Waters Mortgage to Edgefield, Waters Place lost its deal with the Prospective Buyer, and on or about September 10, 2008, Edgefield commenced a successful foreclosure action on the Waters Mortgage.

Waters Place now seeks damages from Compass for: (1) Fraudulent Misrepresentation; (2) Negligent Misrepresentation; (3) Breach of Contract; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing; (5) Tortious Interference with Advantageous Business Relationship; and (6) Breach of Fiduciary Duty.  Compass has moved to dismiss all claims (Doc. 14); in response, Waters Place has moved to amend its complaint (Doc. 18).

**III. Motion to Amend**

Waters Place seeks leave to amend and to add additional parties and additional claims. In its Proposed Amended Complaint (Doc. 18, Ex.1), Waters Place adds Tamy Tampa 1 26, LLC ("Tamy Tampa") as a co-plaintiff and adds the following allegations:

- Tamy Tampa had an ownership interest in Altamonte and Waters Place;

- One of ABA's directors, through Tamy Tampa, approached Compass to renegotiate two loans that Compass had with ABA-managed companies—the Altamonte and Waters Mortgages;

- Compass and Tamy Tampa agreed that Altamonte would transfer all of its interests in its mortgaged property to Compass (the "Deed in Lieu"), and in exchange, Compass would release Waters Place from the Waters Mortgage via short sale for a payoff of less than the $10,000,000 that was still outstanding on the Waters Mortgage (the "Short Sale");

- Together, the Deed in Lieu and the Short Sale comprised a renegotiation agreement between Compass and Plaintiffs Tamy Tampa and Waters Place;

- At all times, Plaintiffs made known to Compass that all negotiations included both mortgages and that the Deed in Lieu with Altamonte was given in consideration for Compass allowing the Short Sale of the Waters Place Property; and

- In furtherance of this agreement, Tamy Tampa complied with all of Compass's requirements for the Deed in Lieu.

In its Proposed Amended Complaint, Waters Place also adds NAI Tampa Bay Commercial Real Estate Services, Inc. ("NAI") and Casey Babb as defendants and adds the following

allegations:

- To effectuate the Short Sale, Waters Place retained the services of NAI, a commercial real estate brokering agency;
- Unbeknownst to Tamy Tampa and Waters Place, Compass was also working with NAI and its agents to broker the Waters Mortgage to a third party;
- NAI agents Babb and John Burpee had a long-standing relationship with Frank Huezel, the senior vice president of Compass;
- Because NAI and its agents were retained by Plaintiffs to broker the Waters Place Short Sale, NAI and its agents had full knowledge of the transactions and dealings between Plaintiffs and the Prospective Buyer;
- Without permission of Plaintiffs, NAI and its agents passed this information along to Compass;
- NAI and its agent brokered the assignment of the Waters Mortgage to Edgefield for Compass without Plaintiffs' knowledge; and
- Neither Compass nor NAI informed Edgefield of the Short Sale arrangement between Waters Place and Compass.

In its Proposed Amended Complaint, Waters Place adds the following claims: (1) Unjust Enrichment as to Compass; (2) Conspiracy as to Compass; (3) Conspiracy as to NAI; (4) Breach of Fiduciary Duty as to NAI and Casey Babb; and (5) Negligent Performance of Professional Service as Real Estate Broker as to NAI and Casey Babb.

In seeking leave to amend its Complaint, the Court finds that Waters Place has not acted in bad faith, nor has it unduly delayed. The Court also finds that amendment would not prejudice

Compass, NAI, or Babb. However, the Court finds that the Proposed Amended Complaint does not contain facts sufficient to demonstrate that Waters Place and Tamy Tampa have standing. While the Court will grant leave to amend to allow Waters Place to cure this deficiency, it must do more than simply plead that both Waters Place and Altamonte were parties to the alleged renegotiation agreement with Compass. Specifically, the Amended Complaint must plead facts sufficient to demonstrate that Tamy Tampa had authority to negotiate on behalf of both Waters Place and Altamonte and that Tamy Tampa was a member of both Waters Place and Altamonte with authority to sue on behalf of both.[2] Thus Waters Place is granted leave to amend to the extent that it may remedy these deficiencies, but it may not add any new claims or parties other than those already included in the Proposed Amended Complaint.

## IV. Motion to Dismiss

Because the Court grants Waters Place leave to amend, Compass's Motion to Dismiss is denied as moot.

## V. Motion to Strike

Compass moves to strike certain demands in the original Complaint. Because the Court is granting leave to amend, this Motion is denied as moot. However, the Court will review

---

[2]The Court finds it disconcerting that the original Complaint alleges that ABA negotiated the Agreement with Compass, while the Proposed Amended Complaint alleges that Tamy Tampa did the negotiating and was a party to the Agreement. Furthermore, the Proposed Amended Complaint alleges only that Tamy Tampa had an ownership interest in Waters Place and Altamonte, but it does not specify the nature of that interest—manager or member? It is therefore unclear how Tamy Tampa could have effectuated the Deed in Lieu on a property owned by Altamonte. Finally, the Proposed Amended Complaint does not allege the authority by which Tamy Tampa negotiated on behalf of Waters Place and Altamonte, if it did in fact negotiate. The Court cautions that Waters Place should provide more clarity to survive another motion to dismiss.

Compass's arguments to the extent they may be applicable to Waters Place's Amended Complaint.

**A. Demand for Jury Trial**

In both the original Complaint and the Proposed Amended Complaint, Waters Place demands a jury trial. Compass argues that Waters Place waived its right to a jury trial by agreement when it entered the Waters Mortgage (Doc. 2, Ex. A). The Court agrees. The Waters Mortgage contains the following waiver provision:

> WAIVER OF JURY TRIAL. MORTGAGOR AND MORTGAGEE, JOINTLY AND SEVERALLY, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF EITHER PARTY.

(Doc. 18, Ex. 2.) The waiver language included in the Waters Mortgage is sufficiently broad to encompass this action. Accordingly, demand for a jury trial is inappropriate here.

**B. Demand for Attorney's Fees**

In both the original Complaint and the Proposed Amended Complaint, Waters Place demands judgment for attorney's fees for each cause of action. However, under Florida law, "attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery." *Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004) (quoting *Bidon v. Dep't of Prof'l Regulation*, 596 So. 2d 450, 452 (Fla. 1992)). Waters Place has not cited any Florida statute that permits the award of attorney's fees for any of its causes of action, nor does it cite a contractual basis for such an award.

Accordingly, a demand for attorney's fees is inappropriate here.

### C. Punitive Damages

In both the original Complaint and the Proposed Amended Complaint, Waters Place demands an award of punitive damages in its claim for breach of the implied covenant of good faith and fair dealing. Under Florida law, however, punitive damages are not recoverable under this type of action. *See Allapattah Serv's, Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1331–32 (M.D. Fla 1999) (finding that, under Florida law, punitive damages are not recoverable under a claim for breach of the implied covenant of good faith and fair dealing). Accordingly, a demand for punitive damages is inappropriate here.

## VI. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Compass's Motion to Dismiss (Doc. 14) is **DENIED** as moot;

(2) Compass's Motion to Strike (Doc 14) is **DENIED** as moot;

(3) Waters Place's Motion to Amend (Doc. 18) is **GRANTED**; and

(4) Waters Place is directed to file its Amended Complaint by **May 10, 2010**, correcting the deficiencies noted by the Court. But Waters Place is barred from adding any additional parties or claims beyond those included in the Proposed Amended Complaint.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of April, 2010.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record